IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

DELLENA WATTS                                                                                    PLAINTIFF

vs.                                           Civil No. 1:08-cv-01063

MICHAEL J. ASTRUE                                                                             DEFENDANT
Commissioner, Social Security Administration

## MEMORANDUM OPINION

Dellena Watts ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act.  The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings.  (Doc. No. 4).[1]  Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

Plaintiff filed her applications for DIB and SSI on June 26, 2006.  (Tr. 56-58, 564-566). Plaintiff alleged she was disabled due to seizures.  (Tr. 86, 168).  Plaintiff alleged an onset date of January 1, 2004.  (Tr. 165).  These applications were initially denied on August 14, 2006 and were denied again on reconsideration on April 3, 2007.  (Tr. 567-571).  On April 23, 2007, Plaintiff

---

[1] The docket numbers for this case are referenced by the designation "Doc. No."  The transcript pages for this case are referenced by the designation "Tr."

requested an administrative hearing on her applications. (Tr. 31). The hearing was held on December 19, 2007 in El Dorado, Arkansas. (Tr. 573-589). Plaintiff was present and was represented by counsel, Denver Thornton, at this hearing. *See id.* Plaintiff and Vocational Expert ("VE") William Elmore testified at this hearing. *See id.* On the date of this hearing, Plaintiff was twenty-eight (28) years old, which is defined as "younger person" under 20 C.F.R. § 404.1563(c) (2008), and had an eleventh grade education. (Tr. 576).

On May 30, 2008, the ALJ entered an unfavorable decision denying Plaintiff's request for DIB and SSI. (Tr. 13-21). In this decision, the ALJ determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since January 1, 2004, her alleged onset date. (Tr. 20, Finding 2). The ALJ determined Plaintiff had the severe impairments of seizure disorder, hypertension, and a history of alcohol abuse. (Tr. 20, Finding 3). The ALJ also determined the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments contained in the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 20, Finding 3).

In this decision, the ALJ also evaluated Plaintiff's subjective complaints and determined her Residual Functional Capacity ("RFC"). (Tr. 20, Findings 4,5). The ALJ evaluated these subjective complaints and allegedly disabling symptoms pursuant to the requirements and factors of *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) and 20 C.F.R. § 404.929. (Tr. 14-15). The ALJ also reviewed all the medical evidence and hearing testimony and determined Plaintiff's RFC. (Tr. 14-20, Finding 5). Specifically, the ALJ determined Plaintiff retained the RFC to perform work related activities except for work involving lifting more than 50 pounds or doing jobs which do not allow for routine seizure precautions or which require greater than unskilled work activity. (Tr. 20).

The ALJ then determined Plaintiff had no Past Relevant Work ("PRW"). (Tr. 20, Finding 6). However, the ALJ also determined, considering her age, education, past work experience, and RFC, that there were other jobs existing in significant numbers in the national economy which Plaintiff would be able to perform. (Tr. 21, Finding 11). Specifically, the ALJ found Plaintiff would be able to perform a job as a cleaner with 3,700 such jobs in Arkansas and 420,000 such jobs in the United States. (Tr. 21). After making this finding, the ALJ determined Plaintiff had not been under a disability, as defined by the Act, at any time through May 30, 2008, the date of the decision. (Tr. 21, Finding 12).

On June 3, 2008, Plaintiff requested the Appeals Council review the ALJ's unfavorable decision. (Tr. 7). *See* 20 C.F.R. § 404.984(b)(2). On July 9, 2008, the Appeals Council declined to review this determination. (Tr. 4-6). On July 30, 2008, Plaintiff appealed the ALJ's decision to this Court. (Doc. No. 1). The parties consented to the jurisdiction of this Court on August 6, 2008. (Doc. No. 4).

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See*

*Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can

perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3. Discussion:**

Plaintiff brings the present appeal claiming the following: (A) the ALJ erred in his finding that Plaintiff did not have an impairment or combination of impairments equal to one listed in 20 C.F.R. pt. 404, subpt. P, app. 1; and (B) the ALJ asked an improper hypothetical to the VE. In response, Defendant argues: (A) the ALJ properly found Plaintiff did not have an impairment or combination of impairments equal to one listed in 20 C.F.R. pt. 404, subpt. P, app. 1; and (B) the ALJ posed a proper hypothetical question to the VE.

**A. ALJ's Evaluation of the Listings**

The ALJ must determine whether Plaintiff has a severe impairment that significantly limits her physical or mental ability to perform basic work activities. A medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521 and 416.921.

The ALJ found Plaintiff did suffer from impairments considered to be severe within the meaning of the Social Security regulations. These impairments were seizure disorder, hypertension, and history of alcohol abuse. (Tr. 20). Plaintiff argues she meets Listing 11.02 - Epilepsy. (Doc. No. 6, Pg. 4-9). However, there was no substantial evidence in the record showing Plaintiff's condition was severe enough to meet or equal that of a listed impairment as set forth in the Listing of Impairments. *See* 20 C.F.R. pt. 404, subpt. P, app.1. Plaintiff has the burden of establishing that her impairment(s) meet or equal an impairment set out in the Listing of Impairments. *See Sullivan*

5

*v. Zebley*, 493 U.S. 521, 530-31 (1990).  Plaintiff has not met that burden in this case.

In order to meet Listing 11.02, there must be a showing of:

convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment. With:

A. Daytime episodes (loss of consciousness and convulsive seizures) or

B. Nocturnal episode manifesting residuals which interfere significantly with activity during the day.

*See* 20 C.F.R. 404, subpt. P, app. 1, § 11.02.

Also, prior to making a finding regarding Listing 11.02, there must be a finding regarding Plaintiff's serum drug levels of antiepileptic drugs to determine if the Plaintiff is following the physician's treatment plan.  Specifically, Listing 11.00(A) states:

Under 11.02 and 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment. Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical finding in the report of the physician currently proving treatment for epilepsy. Determination of blood level of phenytoin sodium or other antiepileptic drugs may serve to indicate whether the prescribed medication is being taken.  When seizures are occurring at the frequency stated in 11.02 or 11.03, evaluation of the severity of the impairment must include consideration of the serum drug levels.

*See* 20 C.F.R. 404, subpt. P, app. 1, § 11.00(A).

In his decision, the ALJ found Plaintiff failed to follow her physician's treatment plan and had a history of noncompliance with her medication regime, and as such, Plaintiff did not meet Listing 11.02.  (Tr. 16).  As discussed below, the medical evidence supports this finding.

On November 8, 2003, Plaintiff was examined at the Medical Center of South Arkansas. (MCSA).  It was noted in her record that she ran out her seizure medicine Dilantin one month before

her visit. (Tr. 462). Plaintiff returned to MCSA on November 29, 2003. (Tr. 457). The record indicated that even though Plaintiff had a prescription for Dilantin, she had not filled this prescription and was out of her medicine. (Tr. 457). Plaintiff was seen at the MCSA on August 13, 2004. (Tr. 416). The record indicates Plaintiff was noncompliant with her seizure treatment. (Tr. 416). On December 10, 2004, Plaintiff returned to MCSA with seizure complaints. (Tr. 395-400). The record states Plaintiff had been out of her seizure medication for several days and was noncompliant with her treatment. (Tr. 400).

On March 8, 2004, Plaintiff was examined by Dr. Jerry Grant. (Tr. 553). The record indicated Plaintiff had a history of seizures, but had no seizures when on Dilantin. (Tr. 553). Plaintiff returned to see Dr. Grant on April 7, 2004. (Tr. 552). Plaintiff stated she was out of her seizure medicine. (Tr. 552). Dr. Grant noted on February 8, 2005 that Plaintiff did not regularly take her seizure medicine. (Tr. 544). On September 26, 2005, Dr. Grant indicated Plaintiff had been out of seizure medication for 2-3 months and was noncompliant in her treatment. (Tr. 538). Dr. Grant indicated in his April 28, 2006 record that Plaintiff was not taking her Dilantin as directed. (Tr. 537). On April 4, 2007, Dr. Grant found Plaintiff's seizure was related to her not taking her Dilantin. (Tr. 534).

On May 30, 2006, Dr. Ghulam Kaleel measured Plaintiff's blood serum level for Phenytoin, and found that it measured 9.5 mcg/ml, which is .5 mcg/mls below the minimum therapeutic level. (Tr. 341). On June 5, 2006, Dr. Kaleel added the medication Keppra to Plaintiff's prescriptions. (Tr. 335). On July 31, 2006, and February 28, 2007, Dr. Khaleel indicated Plaintiff responded well to Keppra, and her seizures were effectively controlled. (Tr. 554).

On March 29, 2007, Plaintiff was examined by Dr. Naim Haddad. (Tr. 342-345). Dr.

7

Haddad expressed concern that previous tests of Plaintiff's blood serum levels had such low results that it raised the question of noncompliance. (Tr. 343). Additionally, on May 11, 2007, Dr. Haddad performed an EEG examination on Plaintiff which was normal and showed no evidence of epileptiform discharges. (Tr. 556).

I find substantial evidence supports the ALJ's determination Plaintiff did not have an impairment or combination of impairments equal to one listed in 20 C.F.R. pt. 404, subpt. P, app. 1.

### B. Hypothetical Question

Plaintiff argues the hypothetical question posed by the ALJ to the VE failed to include all of Plaintiff's impairments, namely the effects of seizures, and as such, was an improper hypothetical. The Defendant asserts the ALJ's hypothetical question was proper and included all of the credible impairments found by the ALJ to be supported by the record.

It is generally accepted that VE testimony, in response to a hypothetical question, is substantial evidence if the hypothetical sets forth the credible impairments with reasonable precision. *See Starr v. Sullivan*, 981 F.2d 1006 (8th Cir. 1992). It has further been established that the ALJ must only include in the hypothetical those impairments which the ALJ actually finds credible, and not those which he rejects, assuming his findings are supported by substantial evidence. *See Onstad v. Shalala*, 999 F.2d 1232 (8th Cir. 1993).

The ALJ found Plaintiff had the RFC to perform work-related activities except for work involving lifting more than 50 pounds or doing jobs which do not allow for routine seizure precautions or which require greater than unskilled work activity. (Tr. 20). In his hypothetical to the VE, the ALJ also limited the work by avoiding jobs which involved heights, vibrations, use of

dangerous machines and driving. In response to a hypothetical question containing these limitations, the VE testified there were other jobs existing in significant numbers in the national economy which Plaintiff would be able to perform. (Tr. 588). Specifically, the VE testified Plaintiff would be able to perform a job as a cleaner with 3,700 such jobs in Arkansas and 420,000 such jobs in the United States. (Tr. 588). Relying on the VE testimony, the ALJ found Plaintiff was not under a disability as defined by the Act. (Tr. 21).

I find the ALJ's hypothetical question properly set forth those limitations he found credible and which are supported by the evidence of record. *See Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir. 1994); *Rappopor1t v. Sullivan*, 942 F.2d 1320, 1322 (8th Cir. 1991) (ALJ need only include in his hypothetical question those impairments he accepts as true). The VE stated Plaintiff was capable of performing work existing in significant numbers in the national economy. Such testimony, based on a hypothetical question consistent with the record, provided substantial evidence to support the ALJ's decision.

### 4. Conclusion:

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED** this **31st day of August, 2009.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE